UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/20

- - - - - - - - - - - - - - - - -X
                                  :
UNITED STATES OF AMERICA          :     ORDER ORIGINAL
                                  :
    - v. -                        :     18 Cr. 684 (VM)
                                  :
KENYATTA TAISTE,                  :
                                  :
                                  :
                Defendant.        :
                                  :
- - - - - - - - - - - - - - - - -X

        WHEREAS, with the defendant's consent, his guilty plea
allocution was made before a United States Magistrate Judge on
December 18, 2019;

        WHEREAS, a transcript of the allocution was made and
thereafter was transmitted to the District Court; and

        WHEREAS, upon review of that transcript, this Court
has determined that the defendant entered the guilty plea
knowingly and voluntarily and that there was a factual basis for
the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea
is accepted.

Dated:     New York, New York
           Dated: *10 March 2020*

                        SO ORDERED:

                        _____
                        HONORABLE VICTOR MARRERO
                        UNITED STATES DISTRICT JUDGE
                        SOUTHERN DISTRICT OF NEW YORK

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        18 Cr. 684 (KNF)

5  KENYATTA TAISTE,

6              Defendant.        Plea

7  ------------------------------x

8                                  New York, N.Y.
                                   December 18, 2019
9                                  11:30 a.m.

10
   Before:
11
                    HON. KEVIN N. FOX,
12
                       MAGISTRATE JUDGE
13

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    JESSICA GREENWOOD, ESQ.
17       Assistant United States Attorney

18  ZACHARY MARGULIS-OHNUMA, ESQ.
    VICTORIA MEDLEY, ESQ.
19       Attorneys for Defendant

20

21

22

23

24

25

JCIETAIP

1          (Case called)

2          THE COURT:  Please be seated.

3          THE DEPUTY CLERK:  This is United States v. Kenyatta

4     Taiste.

5          Counsel, please give your appearance for the record.

6          MR. MARGULIS-OHNUMA:  Jessica Greenwood, Assistant

7     United States Attorney on behalf of the Government.

8          THE COURT:  Good morning.

9          MR. MARGULIS-OHNUMA:  Zachary Margulis-Ohnuma and

10    Victoria Medley on behalf of the defendant, Kenyatta Taiste,

11    who is seated between us.

12          THE COURT:  Good morning.

13          MS. MEDLEY:  Good morning.

14          THE DEFENDANT:  Good morning.

15          THE COURT:  Is there an application on behalf of

16    Ms. Taiste?

17          MR. MARGULIS-OHNUMA:  Yes.  Ms. Taiste withdraws her

18    previously-entered plea of not guilty, and at this time seeks

19    to enter a plea of guilty to Count One of the indictment

20    pursuant to an agreement.

21          THE COURT:  Very well.

22          Ms. Taiste, I have before me indictment 18 Criminal

23    684, a one-count indictment, charging a violation of Title 21

24    United States Code Section 853.

25          I'm sorry.  Count One of the indictment charges a

JCIETAIP

1   violation of Title 21 United States Code Section 846, which
2   makes it a violation for a person to conspire with others to
3   violate the laws of the United States with respect to
4   controlled substances.

5       You have a right to have this morning's proceeding
6   presided over by a district judge.  You may, if you wish,
7   consent to have a magistrate judge preside at this morning's
8   proceeding.

9       In that connection, I have before me a document, which
10  is labeled "consent to proceed before a United States
11  magistrate judge on a felony plea allocution."

12      Would you swear the defendant.

13      THE DEPUTY CLERK:  Stand and raise your right hand,
14  please.

15      (Defendant sworn)

16      THE COURT:  Thank you.

17      I want to show you the consent form about which I have
18  been speaking.

19      Do you recognize the document?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Did you have a opportunity to review it
22  with your attorney?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Is there anything contained in the consent
25  form that you do not understand?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Is that your true signature on the consent

3    form?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did anyone force you to sign the document?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  I turn my attention to your counsel.

8          Counsel, did you also sign the consent form?

9          MR. MARGULIS-OHNUMA:  Yes.

10          THE COURT:  Very well.  I shall sign the document and

11    we shall continue.

12          Would you state your full name, please?

13          THE DEFENDANT:  Kenyatta Taiste.

14          THE COURT:  In the last four hours, have you consumed

15    any medicine, alcohol, or drugs that would affect your ability

16    to understand what you're doing here today?

17          MR. MARGULIS-OHNUMA:  Judge, we're happy to answer

18    that question, but if we could seal that portion of the

19    transcript regarding her medical situation.

20          THE COURT:  I don't see any reason to seal a question,

21    and I don't know what the answer is going to be.  It will

22    either be yes or no.

23          MR. MARGULIS-OHNUMA:  Right.  The answer is going to

24    be yes, and if you get into the details of the medications, I'd

25    like that to be sealed.

JCIETAIP

1    THE COURT:   Well, let me have the answer to the

2  question and then we'll go from there.

3    THE DEFENDANT:  Yes, I have consumed drugs; but no, it

4  won't affect my ability.

5    THE COURT:  All right.

6    Are you under the care of a physician or psychiatrist

7  for any condition?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Is there anything about the treatment

10  you're getting for the condition that would affect your ability

11  to understand what you're doing here today?

12    THE DEFENDANT:  No, sir.

13    THE COURT:  Have you ever been treated for alcoholism

14  or drug addiction?

15    THE DEFENDANT:  Yes.  Yes, sir.

16    THE COURT:  When was the most recent treatment for

17  either of those conditions?

18    THE DEFENDANT:  Last Thursday.

19    THE COURT:  Is there anything about that treatment you

20  received last Thursday that would affect your ability to

21  understand what you're doing here today?

22    THE DEFENDANT:  Oh, no, sir.

23    THE COURT:  What is the extent of your education?

24    THE DEFENDANT:  I have some college.  I attended some

25  college.  I attended college; I just didn't complete it.

JCIETAIP

1    THE COURT:  Have you received a copy of indictment 18
2  Criminal 684?

3    THE DEFENDANT:  Yes.  Yes, I have.

4    THE COURT:  Would you like to have the indictment read
5  to you now in open court?

6    THE DEFENDANT:  No, sir.

7    THE COURT:  Have you had sufficient opportunity to
8  speak with your attorneys about the charge contained in the
9  indictment and how you wish to plead to it?

10    THE DEFENDANT:  Excuse me.  Could you repeat that?

11    THE COURT:  Have you had sufficient opportunity to
12  speak with your attorneys about the charge contained in
13  indictment 18 Criminal 684 and how you wish to plead to it?

14    THE DEFENDANT:  Yes, sir.

15    THE COURT:  Do you understand what it says in the
16  indictment that you --

17    THE DEFENDANT:  Yes, sir.

18    THE COURT:  Are you satisfied with the assistance that
19  your attorneys have rendered to you in connection with this
20  matter?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  Are you ready to plead to indictment 18
23  Criminal 684?

24    THE DEFENDANT:  Yes, sir.

25    THE COURT:  What is your plea, guilty or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Now, if you are not a United States

3   citizen, by your tender of a plea of guilty to the offense set

4   forth in indictment 18 Criminal 684, you may effect adversely

5   your ability to remain within the United States, become a

6   United States citizen, or be admitted into the United States.

7          Do you understand?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  I have to determine whether your plea of

10  guilty is being made voluntarily and whether you understand

11  fully the nature of the charge made against you and the

12  possible consequences of your plea so I shall be asking you

13  additional questions.

14          As I indicated earlier, the sole count of the

15  indictment charges a violation of Title 21 United States Code,

16  Section 846.

17          More specifically, it is alleged through the

18  indictment that you conspired with another person or persons to

19  distribute and possess with intent to distribute 500 grams and

20  more of mixtures and substances containing a detectable amount

21  of methamphetamine, its salts, and salts of its isomers, in

22  violation of Title 21 Section 841(b)(1)(A) and Title 21 United

23  States Code Section 846.

24          The law provides as a maximum penalty for the offense

25  set forth in the indictment following a period of lifetime

1 imprisonment, a mandatory minimum sentence of 10 years'
2 imprisonment, a maximum lifetime term of supervised release, a
3 mandatory minimum term of five years' supervised release, a
4 maximum fine pursuant to Title 18 United States Code Section
5 3571 and Title 21 United States Code 841(b)(1)(A) of the
6 greatest of $10 million twice the gross pecuniary gain derived
7 from the offense or twice the gross pecuniary loss to persons
8 other than yourself as a result of the offense and the
9 mandatory $100 special assessment.

10       If you are sentenced to a term of supervised release
11 and violate the terms and conditions of that supervised release
12 such that it is revoked, you expose yourself to serving in
13 prison all or part of the term of supervised release authorized
14 by statute for the offense that resulted in such term of
15 supervised release without credit for time previously served on
16 post-release supervision.

17       Do you understand the nature of the charge made
18 against you in Count One of the indictment?

19       THE DEFENDANT: Yes, sir. I understand the charge.

20       THE COURT: And do you also understand the range of
21 penalties, including the maximum sentence to which you're
22 potentially exposing yourself by the plea?

23       THE DEFENDANT: Yes, sir.

24       THE COURT: In addition to the offense that's recited
25 in the indictment, the indictment also contains a forfeiture

1    allegation through which the Government has indicated it will

2    seek to recoup from you the proceeds of illegal conduct

3    described in the indictment.

4            Are you aware that the indictment contains a

5    forfeiture allegation?

6            THE DEFENDANT:  A forfeiture allegation?

7            THE COURT:  Yes.

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Do you understand that you have a right to

10   plead not guilty and to persist in that plea?

11           THE DEFENDANT:  Excuse me?

12           THE COURT:  Do you understand that you have a right to

13   plead not guilty and to persist in that plea?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you understand that you have a right to

16   have a jury trial on the charge contained in the indictment?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Do you understand that if you plead not

19   guilty and go to trial the burden would be upon the Government

20   to prove that you're guilty beyond a reasonable doubt?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Do you understand that at a trial you

23   would be presumed innocent until the Government proved your

24   guilt beyond a reasonable doubt?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that at such a trial,

2    and at every other stage of the proceedings, you would have the

3    right to be represented by an attorney; and if necessary, the

4    Court would appoint an attorney to represent you?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you also understand that at a trial you

7    would have the right to testify, to confront and question any

8    witnesses who might testify against you, and the right not to

9    be forced to incriminate yourself?  That is, you don't have to

10    be a witness against yourself?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Do you understand that at a trial you

13    would be entitled to present evidence, to call witnesses to

14    testify, and to compel the attendance of witnesses?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Do you understand that if you plead guilty

17    there will be no trial of any kind so that you give up your

18    trial rights and the only remaining step will be for the

19    assigned district judge to sentence you?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Are you certain that you understand the

22    nature of the charge to which you are pleading?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And are you certain that you understand

25    the range of penalties, including the maximum sentence to which

1   you're potentially subjecting yourself by your plea?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  The offense to which you are tendering a

4   plea involves a controlled substance, and as a result of your

5   tender of a plea to such an offense, pursuant to Title 21

6   United States Code Section 862, you may become ineligible for

7   certain federal and federally-funded benefits to which you

8   might otherwise be eligible including, among others, food stamp

9   benefits, and educational loans or grants.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  In addition, the offense to which you are

13  tendering a plea of guilty is a felony offense, and as a result

14  of your tender of a plea of guilty to a felony offense, you may

15  be giving up certain valuable civil rights that you possess

16  among others the following:

17          The right to hold public office, the right to serve on

18  a jury, the right to vote, the right to possess any firearm,

19  including rifles and shotguns, the right to be considered for

20  certain types of employment, and the right to possess or obtain

21  certain professional licenses.

22          Do you understand?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that the sentencing

25  judge may be obligated to impose a special assessment on you?

1    THE DEFENDANT:  Could you repeat that?

2    THE COURT:  Do you understand that the sentencing

3  judge may be obligated to impose a special assessment on you as

4  part of the sentence to be imposed?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Have you and your attorneys talked about

7  how the Sentencing Commission Guidelines, which are advisory

8  only, might inform the sentence to be imposed upon you?

9    THE DEFENDANT:  Yes.

10    THE COURT:  Do you understand that in determining your

11  sentence the sentencing judge is obligated to calculate an

12  applicable sentencing guidelines range and possible departures

13  under the sentencing guidelines?

14    THE DEFENDANT:  Yes, sir.

15    THE COURT:  Do you understand that, in addition to the

16  factors outlined in the Sentencing Commission Guidelines, the

17  sentencing judge will also consider factors as set forth at 18

18  U.S.C. Section 3553 in determining what an appropriate sentence

19  might be for you?

20    THE DEFENDANT:  Yes, sir.

21    THE COURT:  Do you understand that parole has been

22  abolished, and if you are sentenced to prison you will not be

23  released on parole?

24    THE DEFENDANT:  Yes, sir.

25    THE COURT:  Do you understand that the answers you

1   give to me today under oath may in the future be used against

2   you in a prosecution for perjury or false statement if you do

3   not tell the truth to the Court?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  What are the elements of the offense set

6   forth at Count One of the indictment?

7           MS. GREENWOOD:  Yes, your Honor.  Count One of the

8   indictment has three elements:

9           First, the existence of a conspiracy.  That is, an

10  agreement or understanding between two or more persons to

11  distribute a controlled substance or possess a controlled

12  substance with the intent to distribute;

13          Second, the defendant knowingly and willingly was a

14  member of that conspiracy; and

15          Third, that the conspiracy involved an agreement to

16  distribute and possess with intent to distribute mixtures and

17  substances containing 500 grams and more of methamphetamine,

18  its salts, its isomers and salts of its isomers, in violation

19  of Title 21 United States Code Section 841(b)(1)(A).

20          In addition, the Government would be required to prove

21  by a preponderance of the evidence that venue is proper within

22  the Southern District of New York.

23          THE COURT:  Thank you.

24          Have you heard the elements of the offense set forth

25  at Count One of the indictment?

1         THE DEFENDANT:  Yes, sir.

2         THE COURT:  Is it still your desire to tender a plea

3    of guilty?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Have any threats been made to you by

6    anyone to influence you to plead guilty?

7         THE DEFENDANT:  No, sir.

8         THE COURT:  Have any promises been made to you

9    concerning the sentence that you will receive?

10        THE DEFENDANT:  No.

11        THE COURT:  I understand you and your attorneys, and

12   the representatives of the Government, have reached certain

13   agreements and understandings in connection with your tender of

14   your plea of guilty, and those agreements and understandings

15   have been reduced to a writing, specifically, a letter dated

16   November 26, 2019, addressed to Zachary Margulis-Ohnuma, your

17   attorney.

18        I have a copy of that document before me, which I

19   shall show you now.

20        Do you recognize the document?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Did you have an opportunity to review it

23   with your attorneys?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Is there anything contained in the

1  document that you do not understand?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Among others things, there is text in the

4  November 26, 2019 -- a writing -- to which you admit the

5  forfeiture allegation that I drew to your attention as being

6  part of the indictment.

7          Are you aware that such text exists in the document?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  There is also in that same document an

10  analysis of how the Sentencing Commission Guidelines might

11  apply to your case.

12          Are you aware of that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Do you understand that, notwithstanding

15  the analysis of the guidelines in the November 26, 2019

16  writing, the impact, if any, that the Sentencing Commission

17  Guidelines may have on the sentence to be imposed upon you is

18  left solely to the discretion of the sentencing judge?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  There's also text in the November 26, 2019

21  writing that constricts your ability to appeal from or

22  challenge, or really "attack" the judgment of conviction or

23  sentence that might be imposed upon you, including any fine or

24  period of supervised release.

25          Are you aware of that?

JCIETAIP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  I want to show you the last page of the

3    November 26th, 2019 writing about which we have been speaking.

4          Is your true signature on that page?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did anyone force you to sign the document?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Let me turn my attention to your counsel

9    again.

10         Is counsel's signature also on the last page of the

11   document?

12         MR. MARGULIS-OHNUMA:  Yes.

13         THE COURT:  And it represents that the Government also

14   has signed the last page of the document?

15         MS. GREENWOOD:  Yes, sir.

16         May I make one point for the record, if you're not

17   going to -- or I'm not sure if you are?

18         On the very first page as well there are initials by

19   myself and counsel reflecting language being stricken from the

20   first paragraph of the agreement, which was done prior to the

21   defendant signing the agreement.

22         I wanted to make sure for the record that that was

23   documented and that that was done on the version of the plea

24   agreement before the Court.

25         THE COURT:  I observe the text that was stricken and

1   the initials placed next to that stricken material.

2         Other than the agreements and understandings that you

3   and your attorneys and representatives of the Government have

4   made and reached that are outlined in the November 26th, 2019

5   writing about which we have been speaking, have any other

6   agreements or understandings been made or reached with you in

7   connection with your tender of a plea of guilty?

8         THE DEFENDANT: No, sir.

9         THE COURT: Is your plea being made voluntarily, that

10   is, of your own free will?

11         THE DEFENDANT: Yes, sir.

12         THE COURT: Did you commit the offense set forth at

13   Count One of the indictment?

14         THE DEFENDANT: Yes, sir.

15         THE COURT: Would you tell me in your own words what

16   it is that you did that makes you believe yourself guilty of

17   the offense set forth at Count One of the indictment?

18         THE DEFENDANT: I agreed to have narcotics sent to my

19   house under the understanding that they be distributed

20   elsewhere to other persons.

21         THE COURT: When, or approximately when, did you make

22   this agreement to have narcotics sent to your home as you

23   indicated a moment ago?

24         THE DEFENDANT: Approximately the Summer of 2018.

25         THE COURT: And where was it that you had this

1  agreement to have narcotics sent to your home as you indicated

2  a moment ago?

3         THE DEFENDANT:  In Manhattan.

4         THE COURT:  When you agreed to have narcotics sent to

5  your home, as you described a few moments ago, did you know

6  that what you were doing was wrong?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Any questions the Government would have me

9  put to the defendant?

10        MS. GREENWOOD:  Yes.  We would ask that the defendant

11 be questioned with respect to what kind of controlled substance

12 and the amount of the controlled substance being in excess of

13 500 grams and more of methamphetamine.

14        THE COURT:  What was the narcotic that you indicated

15 was sent to your home based upon the agreement you entered into

16 as described earlier by you?

17        MR. MARGULIS-OHNUMA:  I think the defendant would like

18 to rely on the Government's representations and evidence.  It's

19 not an element that she had a knowledge.  It's an element that

20 that was the amount, and we don't dispute that evidence.  She

21 didn't have specific knowledge of the specific drugs.

22        THE COURT:  Ms. Taiste, your counsel has indicated

23 that you do not contest the Government's assertion that the

24 controlled substance involved in the indictment 18 Criminal 684

25 is methamphetamine, and you do not contest the amount of that

1  controlled substance that the Government alleges was involved;

2  is that correct?

3          THE DEFENDANT:  Yes.  I don't contest.

4          THE COURT:  Are there any other questions the

5  Government would have me put to the defendant?

6          MS. GREENWOOD:  No, your Honor.

7          THE COURT:  All right.

8          Let me turn to defense counsel once again.

9          Do you know of any reason why your client should not

10  plead guilty?

11          MR. MARGULIS-OHNUMA:  I do not, your Honor.

12          THE COURT:  Is the Government aware of any reason why

13  the defendant should not plead guilty?

14          MS. GREENWOOD:  No.

15          THE COURT:  If the matter would proceed to trial, what

16  evidence would the Government offer in support of the charge

17  made in Count One of the indictment, 18 Criminal 684?

18          MS. GREENWOOD:  Yes, your Honor.  The evidence

19  gathered in this investigation, and that the Government would

20  present if it proceeded to trial, would include records --

21  including from a hotel, from shipment records, telephone

22  records and surveillance -- together with cooperating witness

23  testimony, all of which would establish that over the Summer of

24  2015, among other things, the defendant agreed to and, in fact,

25  received a shipment of methamphetamine that was shipped from

JCIETAIP

1  California to Manhattan, New York, and contained approximately

2  15 pounds of material that was subsequently tested and

3  determined to be methamphetamine to her apartment in Manhattan;

4  and after that package was seized by law enforcement in

5  transit, the defendant called UPS from her cell phone to

6  inquire about the status of the package and the tracking of the

7  package; and then in addition, your Honor, evidence with

8  respect to other packages that were also sent to the

9  defendant's apartment in Manhattan as part of that same

10  conspiracy.

11  THE COURT:  And these other packages contained what?

12  MS. GREENWOOD:  The other packages were not recovered.

13  We believe they were additional packages containing

14  methamphetamine.

15  The one package that was intercepted and was not

16  actually delivered to the defendant's apartment is the one that

17  contained methamphetamine.

18  The remaining evidence would have been argued to the

19  jury to also have contained methamphetamine, but they were not

20  actually recovered.

21  In addition, at the time of the defendant's arrest,

22  her apartment was searched and there was evidence also

23  confirming her participation in the narcotics conspiracy; for

24  example, a journal with detailed entries about drug

25  transactions that she was involved in since at least July 2017,

1  including entries in which she describes working as her

2  codefendant's assistant in drug trafficking.

3      THE COURT:  I believe I heard you to say that this

4  occurred in the Summer of 2015.

5      MS. GREENWOOD:  No, excuse me.  The Summer of 2018.

6      THE COURT:  All right.  Thank you.

7      MS. GREENWOOD:  Excuse me your Honor.  2018.

8      THE COURT:  I assume Ms. Taiste understands the nature

9  of the charge made against her and the consequences of the plea

10  of guilty.

11      I'm satisfied the plea's being made voluntarily and

12  knowingly and that there is a factual basis for the plea, so I

13  shall report and recommend to the assigned district judge that

14  the plea be accepted by the district judge, and I will direct

15  that a presentence report be prepared.

16      I will fix a date for sentencing and direct the

17  parties to contact the assigned district judge to determine

18  whether the date is convenient for a sentencing proceeding.

19      MS. GREENWOOD:  Your Honor, my apologies.  I had told

20  Mr. Contreras that there was not a sentencing date, and I had

21  subsequently spoke to Judge Marrero's clerk who set sentencing

22  for March 20th at 10:15 a.m.

23      THE COURT:  Thank you.

24      I shall direct that the presentence report be prepared

25  prior to the 20th day of March, 2020.

1          In connection with the generation of that report, the

2     Government should provide its case summary materials to the

3     probation office not later than 14 days from today, and the

4     defendant and her counsel should arrange for an interview with

5     the probation office not later than 14 days from today.

6          I direct the Government to obtain a transcript of the

7     minutes generated during this proceeding and present same to

8     the assigned district judge before the date of sentence.

9          Is there any request with respect to bail?

10          MR. MARGULIS-OHNUMA:  No.  Just that it be continued.

11          THE COURT:  What's the Government's position on the

12     application?

13          MS. GREENWOOD:  I think, your Honor, until Judge

14     Marrero accepts the plea we consent to the arrangement

15     continuing.  We think at that time we would discuss with

16     counsel whether we'd seek remand.

17          THE COURT:  Application is granted.

18          Anything else we need to address?

19          MR. MARGULIS-OHNUMA:  Not from the defendant.  Thank

20     you.

21          MS. GREENWOOD:  Not from the Government.

22          THE COURT:  Very well.  Good day.

23          (Adjourned)

24

25



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 26, 2019

**BY EMAIL**

Zachary Margulis-Ohnuma, Esq.
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 685-0999

**Re: *United States* v. *Kenyatta Taiste*, 18 Cr. 684 (VM)**

Dear Mr. Margulis-Ohnuma:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Kenyatta Taiste ("the defendant") to Count One of the above-referenced Indictment (the "Indictment"). Count One charges the defendant with conspiring to distribute and possess with intent to distribute: ~~(a)~~ 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846; ~~and (b) mixtures and substances containing a detectable amount of gamma-Butyrolactone ("GBL"), an analogue of gamma-Hydroxybutyric acid,~~ in violation of Title 21, United States Code, Sections ~~813,~~ 841(b)(1)(C), and 846. This charge carries a maximum sentence of life imprisonment; a mandatory minimum sentence of 10 years' imprisonment; a maximum lifetime term of supervised release; a mandatory minimum term of five years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Section 841(b)(1)(A), of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for participating in a conspiracy, from in or about August 2017 through in or about August 2018, to distribute and possess with intent to distribute methamphetamine and GBL, as charged in Count One of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges she is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

2019.07.08

The defendant furthermore admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon her in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The November 2018 Guidelines Manual applies to this case.

2. U.S.S.G. § 2D1.1 is the Guideline applicable to Count One.

3. Pursuant to U.S.S.G. § 2D1.1, Application Note 8(B), the Drug Equivalency Tables are a means of combining different controlled substances to obtain a single offense level. The offense involved the following quantities of controlled substances, which are the equivalent of the following Converted Drug Weight, pursuant to U.S.S.G. § 2D1.1, Application Note 8(D):

| Controlled Substance | Quantity/Weight | Converted Drug Weight |
|---|---|---|
| Methamphetamine | 13.15 kilograms | 26,300 kilograms |
| GBL | 200 kilograms | 1,760 kilograms |
| Total | | 28,060 kilograms |

4. Pursuant to U.S.S.G. § 2D1.1(c)(3), the base offense level is 34, because the defendant's offense involved at least 10,000 kilograms of Converted Drug Weight but less than 30,000 kilograms of Converted Drug Weight.

5. Pursuant to U.S.S.G. § 2D1.1(b)(18), because it appears to this Office, based on the information currently available to it, that the defendant meets the criteria set forth in subdivisions (1)-(5) of U.S.S.G. § 5C1.2(a), the offense level is reduced by two levels.

6. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 29.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has two criminal history points, calculated as follows:

1. On or about November 7, 2005, the defendant was convicted of filing a false police report of a felony, in violation of South Carolina Penal Code, section 16-17-722, a felony, and breach of trust with intent to defraud involving property exceeding $5,000, in violation of South Carolina Penal Code, section 16-13-230, a felony. On or about November 7, 2005, the defendant was sentenced to a term of probation. Pursuant to U.S.S.G. § 4A1.2(e), this conviction results in no criminal history points.

2. Pursuant to U.S.S.G. § 4A1.1(d), two points are added because the defendant committed the instant offense while on parole.

In accordance with the above, the defendant's Criminal History Category is II.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's Guidelines range is 97 to 121 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 29, the applicable fine range is $30,000 to $10,000,000.

Title 21, United States Code, Section 841(b)(1)(A) requires a statutory minimum term of imprisonment of 120 months. Accordingly, absent relief from the statutory minimum sentence, the defendant's sentence would be at least 120 months. On the basis of the information available to this Office, however, the defendant appears to satisfy the conditions set forth in Title 18, United States Code, Section 3553(f) for relief from the statutory minimum sentence provision. Accordingly, absent new information, the Government will take the position at sentencing that the statutory mandatory minimum sentence does not apply, and that the Guidelines range is therefore in the range of 97 to 121 months (hereinafter "the Stipulated Guidelines Range").

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that her entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw her plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 97 to 121 months' imprisonment, even if the Court denies the defendant's application for safety valve relief, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The

parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $10,000,000, and the Government agrees not to appeal any fine that is greater than or equal to $30,000. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that she has accepted this Agreement and decided to plead guilty because she is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw her plea or to attack her conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if she is not a citizen of the United States, her guilty plea and conviction make it very likely that her removal from the United States is presumptively mandatory and that, at a minimum, she is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, she recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if her naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that she has discussed the possible immigration consequences (including removal or denaturalization) of her guilty plea and conviction with defense counsel. The defendant affirms that she wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including her attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw her guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge her conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from her guilty plea and conviction.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any

counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Nicholas W. Chiuchiolo
Assistant United States Attorney
(212) 637-1247

APPROVED:

_____
George D. Turner
Co-Chief, Narcotics Unit

AGREED AND CONSENTED TO:

_____
Kenyatta Taiste

_12/18/19_____
DATE

APPROVED:

_____
Zachary Margulis-Ohnuma, Esq.
Attorney for Kenyatta Taiste

_12/18/19_____
DATE



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 9, 2020

**BY HAND DELIVERY**

The Honorable Victor Marrero
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

### Re: United States v. Kenyatta Taiste, 18 Cr. 684 (VM)

Dear Judge Marrero:

The defendant in the above-referenced matter entered a guilty plea on December 18, 2019, before Magistrate Judge Fox. The Government respectfully requests that Your Honor accept the defendant's plea. Enclosed please find for your consideration (1) a proposed Order accepting the defendant's plea; (2) a transcript of the guilty plea allocution; and (3) the parties' plea agreement. A sentencing hearing is currently scheduled for May 8, 2020.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

by: _____

Nicholas W. Chiuchiolo
Assistant United States Attorney
(212) 637-1247